UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-81264-ROSENBERG/REINHART

PATRICK MCATEER and
J. DOUGLAS WILKINS,

    Plaintiffs,

v.

CIARDI CIARDI & ASTIN, P.C., *a
Pennsylvania professional corporation*, *et al.*,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 58]. The Court has carefully considered the Motion, Plaintiffs' Response thereto [DE 67], Defendants' Reply [DE 74], and the record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendants' Motion for Summary Judgment is denied.

### I.    FACTUAL BACKGROUND

Severn Jupiter, LLC ("Severn") borrowed $6,300,000 from BankAtlantic to purchase waterfront commercial property in Jupiter, Florida, and executed a Promissory Note and a Mortgage Deed pledging the property as security. DE 59-6. Plaintiffs executed Guarantees as additional security.

BankAtlantic filed a foreclosure action ("the Foreclosure Case") in 2009 against Severn and Plaintiffs. DE 68-11. Severn and Plaintiffs had retained Defendants in connection with another matter, and the parties agreed that Defendants also would represent Severn and Plaintiffs in the Foreclosure Case. DE 59 at 3; DE 68 at 3-4. A court entered Summary Final Judgment of

Foreclosure in December 2009, concluding that $7,393,091.22 was owed to BankAtlantic.  DE 59-6.  BankAtlantic subsequently assigned its rights, title, and interest in and to the Summary Final Judgment to Heartwoood 91-4, LLC ("Heartwood").  DE 59-1 at 1-2; DE 59-9 at 1-2.  Heartwood acquired the property at the foreclosure sale on July 26, 2010.  DE 59-1 at 2; DE 59-9 at 2.

In September 2010, Heartwood filed a Motion for Deficiency Judgment against Severn and Plaintiffs in the Foreclosure Case.  DE 59-9.  Heartwood submitted a proposed Stipulated Deficiency Judgment to Defendants Albert Ciardi and Thomas Bielli, and, on May 3, 2011, Bielli responded that his "clients consent[ed]" to the proposed judgment.  DE 68-16.  Heartwood then submitted the Stipulated Deficiency Judgment to the court, representing to the court that Plaintiffs consented to the entry of the judgment.  DE 68-18.  The court entered the Stipulated Deficiency Judgment in the amount of $4,291,265.88 on May 4, 2011.  DE 59-1.  Heartwood began collection efforts against Plaintiffs in September 2014.  DE 68-3.

According to Plaintiffs, Defendants failed to inform them of Heartwood's Motion for Deficiency Judgment, mount any opposition to the Motion, and inform them of the proposed Stipulated Deficiency Judgment and the entry of the judgment.  DE 1-1 at 18-28; DE 68-2 at 7-9; DE 68-6 at 7-8.  Plaintiffs maintain that Defendants had no authority to negotiate a deficiency judgment on their behalf and that they did not consent to the proposed Stipulated Deficiency Judgment.  DE 1-1 at 25-26; DE 68-2 at 8; DE 68-6 at 8.  Plaintiffs contend that they were unaware of the Stipulated Deficiency Judgment until Heartwood began collection efforts in 2014 and that they were unaware that Defendants purportedly had consented to the Stipulated Deficiency Judgment on their behalf until October 11, 2017, when Plaintiff Patrick McAteer was deposed in

2

connection with Plaintiffs' efforts to vacate judgment. DE 1-1 at 31-35; DE 68-2 at 10-11; DE 68-6 at 9.

## II. PROCEDURAL HISTORY

Plaintiffs filed the Complaint in this case in state court on August 24, 2018, and Defendants removed the case to this Court. DE 1. The Complaint brings claims of professional negligence ("Count I"), breach of fiduciary duties ("Count II"), fraud ("Count III"), and negligent misrepresentation ("Count IV"). DE 1-1 at 6-60. Defendants now seek summary judgment, arguing that the statute of limitations bars Plaintiffs' claims. DE 58 at 7-11. Alternatively, Defendants seek summary judgment against McAteer on the ground that he has suffered no damages. *Id.* at 11-12.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact court return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court does not weigh conflicting evidence or make credibility determinations. *Id.* Upon discovery of a genuine dispute of material fact, the court must deny summary judgment and proceed to trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

If the movant shows that there is no genuine dispute as to a material fact, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). The non-moving party does not satisfy this burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Jones*, 683 F.3d at 1292 (quotation marks omitted). The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quotation marks omitted). A non-conclusory affidavit based on personal knowledge, even if uncorroborated and self-serving, can create a genuine dispute of material fact that defeats summary judgment. *United States v. Stein*, 881 F.3d 853, 857-59 (11th Cir. 2018).

If there is a genuine dispute as to when the statute of limitations began to run, summary judgment on that issue is inappropriate. *Moecker v. Honeywell Int'l, Inc.*, No. 5:97-cv-329, 2000 WL 34361504, *9 (M.D. Fla. Oct. 23, 2000). State of mind and due diligence for statute of limitations purposes are often questions of fact most suited for a jury determination. *Becks v. Emery-Richardson, Inc.*, Nos. 86-6866, 87-1554, 1990 WL 303548, *9 (S.D. Fla. Dec. 21, 1990).

## IV.     ANALYSIS

### A.     Statute of Limitations for Count I

An action for professional malpractice other than medical malpractice must be commenced within two years, "provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(4)(a). Defendants contend that, because the professional negligence claim is predicated on litigation that resulted in a judgment, the statute of limitations for Count I is two years from the

4

expiration of the time to appeal the Stipulated Deficiency Judgment. Defendants rely on a "bright-line rule" articulated by the Florida Supreme Court and cite to *Silvestrone v. Edell* and *Larson & Larson, P.A. v. TSE Indus., Inc.*

In *Silvestrone*, the court addressed the statute of limitations for a legal malpractice claim based on a civil proceeding where final judgment was entered approximately two years after a jury verdict. 721 So. 2d 1173, 1174 (Fla. 1998). The court held that, "when a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment." *Id.* at 1175-76 (referring to this holding as a "bright-line rule" that would "provide certainty and reduce litigation" over when the statute of limitations in Fla. Stat. § 95.11(4)(a) begins to run). The court reasoned that "a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client," such that "redressable harm is not established until final judgment is rendered." *Id.* at 1175 (noting that a court has the inherent authority to reconsider, alter, or retract any nonfinal rulings prior to entry of final judgment).

The court further discussed this bright-line rule in *Larson*, where judgment was entered following trial, the parties filed post-trial motions, the trial court subsequently ruled on those motions, and the parties filed a stipulation of dismissal before the amount of a sanctions award was determined. 22 So. 3d 36, 38 (Fla. 2009). The court concluded that, under the rule announced in *Silvestrone*, the statute of limitations for malpractice claims based on the underlying litigation began to run when judgment was entered. *Id.* at 41-46. The court acknowledged that the extent of a client's damages may be impacted by post-trial motions, but stated that it is sufficiently certain

5

that the client has sustained some loss when an adverse judgment is entered. *Id.* at 42-43 ("*Silvestrone*'s rule . . . merely establishes a bright line for establishing when the client has suffered *some loss* as a consequence of the attorney's negligence. It does not require that there be a determination of the *full extent* of all losses suffered by the client due to the lawyer's negligence."). However, the court concluded that the statute of limitations for malpractice claims based on the post-trial motions began to run when those motions were resolved with finality. *Id.* at 46-48 (reasoning that damages suffered by a client from an underlying judgment and from the resolution of post-trial motions are discrete losses that give rise to the accrual of discrete causes of action for malpractice).

Neither *Silvestrone* nor *Larson* addressed a situation such as that presented here, where there is evidence that Plaintiffs were unaware of the Stipulated Deficiency Judgment until several years after it was entered. *See* DE 68-2 at 9-11; DE 68-6 at 8-9. Defendants have pointed to no authority and the Court has found none to support the proposition that an entry of judgment of which a client has no knowledge begins the statute of limitations for a legal malpractice claim. Defendants also have pointed to no authority and the Court has found none to support the proposition that, as a matter of law, a judgment, by its entry into the public record, "should [be] discovered with the exercise of due diligence" for the purpose of commencing the statute of limitations. *See* Fla. Stat. § 95.11(4)(a).

In fact, a note to the Florida pattern jury instruction on defenses to professional malpractice claims anticipates a circumstance where a client may be unaware of a final judgment, which may delay the running of the statute of limitations:

> In legal negligence actions predicated on acts committed in the course of litigation, the statute of limitations does not begin to run until the underlying litigation is

6

> concluded by final judgment and the final disposition of any appeal. *See Silvestrone v. Edell*, 721 So. 2d 1173 (Fla. 1998). This may be extended if there is an issue regarding whether the client knew or should have known that the litigation was concluded. [Fla. Stat. §] 95.11(4)(a).

Fla. Civil Jury Instruction 402.14, notes for use for 402.14(a).

Here, there is evidence that Plaintiffs were unaware of the Stipulated Deficiency Judgment until McAteer was served in September 2014 and Plaintiff J. Douglas Wilkins was served in October 2014 in connection with Heartwood's efforts to collect on the judgment. *See* DE 68-2 at 9-11; DE 68-6 at 8-9. Although Defendants argue that Wilkins knew of the Stipulated Deficiency Judgment in October 2011, when he filled out post-judgment discovery that listed the judgment, and in June 2014, when someone at his home received service of the judgment, there is evidence that the post-judgment discovery documents were altered after Wilkins signed them and that he did not receive the documents that were served at his home. *See* DE 59-2 at 13; DE 59-3; DE 68-2 at 9-11. And although Defendants argue that Plaintiffs were aware of the potential for a deficiency judgment, such that they could have conducted a diligent inquiry into public records, there is evidence that Plaintiffs believed, based on a February 2009 property appraisal valuing the property at $8.8 million, that the foreclosure would satisfy the debt to BankAtlantic. *See* DE 59-6; DE 68-2 at 3-5; DE 68-6 at 3-5; DE 68-10. Thus, there is a genuine dispute of material fact concerning when Plaintiffs discovered or with the exercise of due diligence should have discovered that the Stipulated Deficiency Judgment had been entered against them.

In addition, record evidence creates a further factual question as to when Plaintiffs discovered or should have discovered that Defendants purportedly had consented to the entry of the Stipulated Deficiency Judgment on their behalf. There is evidence that, after learning of the Stipulated Deficiency Judgment, Plaintiffs retained a lawyer to investigate the origin of the

7

judgment, the lawyer sought information from Ciardi about the judgment, and Ciardi reported to the lawyer on April 17, 2015, that "[w]e litigated the issues" related to the judgment. *See* DE 68-2 at 11; DE 68-6 at 9; DE 68-20; DE 68-21. Evidence further indicates that, during a deposition of McAteer on October 11, 2017, less than two years before commencing this action, Plaintiffs learned for the first time of Bielli's email to Heartwood stating that his "clients consent[ed]" to the proposed Stipulated Deficiency Judgment. *See* DE 68-2 at 1; DE 68-6 at 9. Thus, there is a genuine dispute of material fact concerning when Plaintiffs discovered or with the exercise of due diligence should have discovered that they had a legal negligence claim against Defendants. *See* Fla. Stat. § 95.11(4)(a). These factual issues preclude summary judgment on Count I.

### B.     Statute of Limitations for Counts II, III, and IV

An action founded on negligence or fraud must be commenced within four years. *Id.* § 95.11(3)(a), (j); *see also Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 749 F. App'x 776, 785 (11th Cir. 2018) ("Under Florida law, a four-year limitations period applies to claims for . . . breach of fiduciary duty."), *cert. denied*, 139 S. Ct. 2019 (2019); *Ostreyko v. B. C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. 3d Dist. Ct. App. 1975) ("In this state, a negligent misrepresentation is considered tantamount to actionable fraud."). Defendants contend that Counts II, III, and IV are untimely because they were not brought within four years of entry of the Stipulated Deficiency Judgment. However, Plaintiff's claims of breach of fiduciary duties, fraud, and negligent misrepresentation are based, in part, on allegations that Defendants continued to mislead them about the Stipulated Deficiency Judgment at least through April 17, 2015, when Ciardi reported that "[w]e litigated the issues" related to the judgment. *See* DE 1-1 at 33-34, 46, 52, 59; DE 68-2 at 11; DE 68-21; *see also Tambourine Comercio Int'l S.A. v. Solowsky*, No. 06-20682-civ, 2007

8

WL 689466, *9-11 (S.D. Fla. Mar. 4, 2007) (explaining that, under Florida law, an attorney may continue to owe fiduciary duties to a former client). Because Plaintiffs commenced this action within four years of that alleged misrepresentation, summary judgment on Counts II, III, and IV is denied.

### C. McAteer's Damages

In the alternative to their arguments based on the statute of limitations, Defendants assert that they are entitled to summary judgment against McAteer because he has suffered no damages from their alleged actions. Defendants point out that McAteer entered into an agreement with Heartwood to settle the Stipulated Deficiency Judgment for $300,000. *See* DE 59-4 at 11; DE 68-6 at 10. Defendants contend that this settlement is less than McAteer would have owed under a deficiency judgment, even had he actively litigated Heartwood's Motion for Deficiency Judgment and convinced a court to accept a $6.7 million valuation of the property.[1]

Defendants ignore that McAteer is also seeking as damages at least $531,000 in attorneys' fees and costs that he has incurred in defending against Heartwood's collection efforts. *See* DE 59-4 at 11; DE 68-6 at 9-10. In addition, had McAteer actively litigated Heartwood's Motion for Deficiency Judgment, he may have convinced a court to accept a higher valuation of the property such that there may have been no deficiency judgment at all,[2] or he may have settled with Heartwood for an amount less than $300,000. *See* DE 68-2 at 3-5, 12; DE 68-6 at 3-5, 10. Consequently, Defendants' motion for summary judgment against McAteer must be denied.

---

[1] Plaintiffs have submitted a retrospective appraisal by Robert Banting dated April 12, 2019, that values the property at $6.7 million as of July 26, 2010, the date of the foreclosure sale. *See* DE 59-5.

[2] An appraisal by Mr. Banting dated February 18, 2009, values the property at $8.8 million. *See* DE 68-10.

9

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE 58] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of September, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record